Good morning, and may it please the Court. My name is John Meyer, and I represent the plaintiff and appellant in this appeal. I'd like to reserve four minutes for rebuttal. This case arises out of Section 16b of the Securities Exchange Act of 1934. It presents issues of first impression that are of great interest to corporations and their directors, to investors and attorneys alike. We do have the benefit of the SEC's views in this case, and not surprisingly, each party argues that the Court should defer to the SEC's interpretation when that interpretation favors the party's respective position. My job is to explain why the SEC is correct in concluding that the exemption under Rule 16b-3 does not apply to unknown directors. This is not a question of blind deference to the SEC. There are real, substantive reasons for this position that go to the heart of the rule and the purpose of the statute. My job is also to explain why the agency has overstepped its bounds in concluding that it may exempt transactions involving known directors by deputization and merger-related transactions. We can show that these transactions often carry a potential for speculative abuse, but the Court must look to the entire short-swing transaction when examining that potential, not just one leg of the transaction. I'd like to start with the category of unknown directors by deputization. This is the category where we are in agreement with the SEC. As the Court knows, the SEC considers it imperative that a Board of Directors be able to perform a gatekeeping function when approving trades involving corporate insiders. This gatekeeping function cannot happen unless the Board knows who it is dealing with. When the SEC created this exemption, it assumed that issuer-insider transactions would be motivated by legitimate corporate objectives. The only check on this assumption is the monitoring gatekeeping role of the Board. The entire exemption is premised on the concept of a vigilant Board. This underpinning to the rule crumbles if the Board is unaware of the director status of an entity like TRS in this case. Now, whether a particular director has been disclosed or not is an issue of fact, as the SEC recognized, and that issue of fact simply cannot be resolved at this stage of the proceedings. TRS does not really dispute that this is an issue of fact, but it claims that the issue can be resolved in its favor right now. The short answer to that question is that the standard of review governs here. This is a Rule 12b6 motion to dismiss. All inferences are to be construed in the non-moving party's favor. That's us. And our allegations must be accepted as true. The longer answer really focuses on the distinction between a Board's awareness that a director may be affiliated with a company and a Board's awareness that a director, that there's an actual deputization situation. The question I have is the first part of your statement, whether it's a factual issue, in part depends on the resolution of whether Board members by deputization are excluded. And as I understand the American Express argument is because if you read the exemption, if you will, that in their view, by its terms, it applies to the Board. It applies to all insiders equally, and there's no, if you will, kind of a caret that says, except deputy, you know, except by deputization. In other words, they're saying that the SEC, by adopting its provision, you are in effect amending the provision. And would you respond to that? Right. I think Your Honor is correct in characterizing that argument. The term director, it comes down to what does the term director mean in the regulation? Does it encompass all directors by deputization, or is that an open question that has now been resolved by the SEC? In our view, the term director does not at all clearly encompass directors by deputization in the rule. It is an open question, as one of the leading treatise authors identified prior to this case. One way to determine whether the rule is silent on that question, whether it's ambiguous on that question, is to look at the justifications proffered by the SEC when it adopted this rule back in 1996. You're not back to the legal question, not the factual question. That's correct. That's what Judge McKeown said. You can't get to the factual question until you resolve the legal question. Let's try to resolve that legal question. And now you're back to your first legal question, not you had two legal questions. One was, will you disagree with the SEC? And one, will you agree with the SEC? Right. And I thought you were starting backwards with the one where you agree with the SEC. We did. But now you're on to the one where you disagree with the SEC. No. We're still on the question of whether the rule encompasses or exempts unknown directors by deputization. So this is the first issue. This just assumes, for talking purposes, that the SEC had the authority to promulgate the rule. Now you have to figure out what it says. That's your second issue. That's right. But you're taking first. Still with the first issue. Yes. Unknown directors. It's just flipping the order of the briefs on this issue. That's right. Yeah. Starting with where the SEC agrees with us, if you look at the justifications for the rule, those justifications that the SEC proffered back in 1996 assume a conventional director, not a director by deputization. To the extent that the SEC said most of these transactions will involve compensation from an issuer, a company, to its directors, that's not going to happen with a director by deputization. The director by deputization will be an entity that will not be receiving compensation. To the extent the SEC said directors, the state fiduciary law will provide a fallback for the loosening of the restrictions here on trades, that rationale assumes a conventional director because state fiduciary law does not apply to directors by deputization. To the extent that the SEC said the board has an important gatekeeping monitoring role, that also assumes a conventional director, at least a known conventional director. Where the director is unknown, as it is here, the board simply cannot perform that gatekeeping monitoring role. So if you look at the rationales for this exemption, none of them apply to unknown directors by deputization. So at best the director would always be an entity. It almost always would be an entity. I cannot, I'm not aware of any instance in the cases where it has not been an entity. Not that these cases crop up that much. So for those reasons, at best... When you say known, let me be very clear about what it is that's known. Because, and I wander into the factual side, and I'm trying to keep from doing it, but I can't help but do it because it makes a difference as to what it is that has to be known at the time. Is it the relationship, or is it specifically the deputization part that you're talking about? It is the deputization part. And here's the real difference. When a board knows that there is a deputized director, it can rightly assume that the named director that's actually sitting on the board will be passing inside information back to, in this case, TRS. And it can therefore act accordingly in performing its gatekeeping function. If there are transactions, in this case, between Infospace and TRS, the board is on notice that, hey, we have an insider here that may have inside information. Let's scrutinize these transactions. In the case of mere knowledge that Mr. House may have been affiliated with TRS, that he was a high-ranking officer, the board can assume that he is not passing information back to TRS, his employer, because that would be a breach of his fiduciary duty to Infospace. In other words, the fact that, obviously, they knew he came from CREO in some respects, because that was public knowledge and they'd done their due diligence. Sure. But that alone wouldn't be enough, and that's the factual issue, you say, as to whether, in fact, there was some deputization. Correct. Correct. I'd like to touch on an issue that is related to this gatekeeping function, and that is the specificity requirements, the specificity with which the board must approve individual insider issuer transactions. In the context of this case, what that means is that when the Infospace board approved a transaction involving Infospace and TRS, it needed to approve that individual transaction. It needed to acknowledge the name of the director here, in this case, TRS. It needed to identify the number of securities involved in the transaction. And all of this should have been evidenced in a formal corporate document, a resolution, board minutes, or the like. The significance of that issue here is that it was TRS's burden to show that it came within the exemption. And part of that burden is showing that the Infospace board met the specificity requirements of the rule. And that simply has not been shown here. TRS has not carried that burden. That's a separate ground for remanding this case. At the very least, this Court can clarify that this is an issue. Would that be an issue, though, if you were wrong and this didn't apply to, you know, if it did apply to unknown directors as a flat-out exemption? Well, it would apply. I'm trying to understand the fork in the road here. Right. The specificity requirements apply regardless of the nature of the director in this situation. They're an independent requirement that is imposed by Note 3 to the rule. And the second circuit case in Grill also discussed the specificity requirements. So it's an independent ground for remand here. So you're saying that even if American Express is correct in its interpretation that there's just a blanket director, that you would still need to meet these requirements and that would raise a factual issue here as to whether they had been met? That is correct, yes. What the record shows now is simply a blanket approval of the So it is an additional independent issue. I'd now like to move on to the category of known directors by deputization and merger-related transactions in general. This is, as Judge Reinhart said, the second part of the argument where we disagree with the SEC. And I'd like to focus on one issue in particular that I think may act as a fulcrum in this appeal. The primary rationale advanced by both the SEC and TRS to defend the exemption is the notion that there is no possibility of speculative abuse in a transaction between an issuer and an insider because those two parties have access to the same inside information. There's no informational disadvantage, as the SEC puts it. They stand on an equal footing as far as inside information goes, or at least that's the theory. The corollary to that is that there is a potential for speculative abuse when an insider engages in a market transaction with someone who does not possess inside information. Now, setting up that argument, there's a very basic flaw, we believe, in the SEC's reasoning. Under the statute, a court is not to examine one leg of a short swing transaction in isolation from the other leg of the transaction. The statute speaks in terms of profit realized from a, quote, sale and purchase or, quote, purchase and sale. It treats the paired transaction as a conceptual unit. In every 16B case involving an unorthodox transaction, the relevant question is, is there potential for speculative abuse that adheres in the structure of the short swing transaction, not just one leg of that paired transaction? We can answer that question in a way that sheds light here by looking at a hypothetical that flows from the facts of this case. David House, the director at issue here, was a dual director for both PREO and InfoSpace at the time of the merger. He was also a member of the InfoSpace audit committee. He clearly had access to inside information. If we assume, as we must, that he was a conduit for inside information to TRS, his employer, the actual director in this situation, then TRS did possess inside information at the time of the merger and when it sold InfoSpace stock less than six months later. Let's assume that TRS, when the merger took place, became aware that key units of InfoSpace were underperforming. They were failing. They would not meet previous forecasts. This is valuable inside information. The SEC and TRS look at TRS's initial purchase of InfoSpace stock in connection with the merger and they say, no harm, no foul. With the first leg of that transaction, both parties stood on an equal footing as far as inside information. There simply is no harm of the type contemplated by the statute. But what about the second leg of this paired transaction? TRS knows at that time that the investing public does not that InfoSpace is underperforming. It is aware that InfoSpace's stock price is likely artificially inflated by virtue of that nondisclosure of valuable inside information. I understand that point, but what I'm wondering is the initial dichotomy set up about whether the SEC can't adopt such a regulation if there's some possibility of abuse or harm. And it seems to me that you want it to be pristine. In other words, and that seems to me to be a legal question, do they have to have a pristine regulation, or if, as the SEC does acknowledge, there definitely could be some jiggling here. We're not saying this is a perfect regulation, but we think on balance that it's not subject to the kind of abuses. So I was looking at your language. You say there has to be absolutely no risk of speculative abuse. What would be the authority for adopting that pristine approach in terms of restricting personal security? Perhaps we were too strident in saying absolutely no possibility. I think it would be very difficult to craft a regulation that completely eliminated the possibility of all types of speculative abuse. So you agree that they don't have to do that? I think what we're saying is that it has to be truly remote. The rule can't invite speculative abuse. And in this situation, we think it does invite speculative abuse. It's simply too easy to use inside information in the hypothetical that we've laid out based on the facts of this case. Are you planning on saving any time for rebuttal? Yes, I would like to. Because you're under two minutes. Okay. I will take Your Honor's suggestion and conclude here, unless there are questions pending. I'll take up the rest on rebuttal. Thank you. May it please the Court. Robert Zimmit for American Express. I think this case deals with the spectrum of deference that a court should give to agency action. We start with the SEC rule as it was adopted. And under Chevron, and this I think is an answer to Your Honor's question, there's no requirement, and we know that the Congress delegated to the SEC the authority to promulgate regulations and to exempt transactions and classes of transactions where it thinks would be inimical to the interest of the rule to sweep them in under 16b. And under Chevron, the test is whether the legislative regulation is arbitrary or capricious. It doesn't have to attain a standard of perfection. And that notion has been repeated by the Supreme Court in Meade and in other cases since Chevron. So the authority, it seems to me, and even recently in the Brand X case, that it's pretty clear, it should be clear, that the SEC had the authority to promulgate 16b.3 and exempt, as it did, a class of transactions. And it exempted a narrow class of transactions. It didn't exempt, as counsel may have suggested, all merger transactions. It simply exempted transactions where the issuer is on one side of the transaction. And, as relevant here, the board of directors approved the transaction, the merger transaction, which was the transaction under which American Express acquired its InfoSpace shares. Now, the Supreme Court, in the foremost case many years ago, was faced with the argument that, gee, if we can find in either leg of a paired transaction the potential for speculative abuse, we ought to apply 16b. And the court there said, they weren't going to require that because, in the foremost case, the question was whether the transaction in which somebody becomes an insider, crosses the 10% threshold, for example, should be paired with the second transaction and, if there's a profit within six months, disgorge the profit. The Supreme Court said no. Under the language of the statute, even though there is a potential for abuse, the perfection, in terms of squeezing out the potential for, actually, what the Supreme Court said, is serving the congressional purpose does not require resolving every ambiguity in favor of liability under Section 16b. So we're faced with a regulation that, on its face, exempts the transaction under which American Express got its acquired insider status. So now we're faced with the other end of the deferential spectrum. Should this court, in the face of a clear statute, accept a notion advanced in an amicus brief In the face of a clear regulation. Exactly. I'm sorry. Clear regulation. But to be treated as clear regulation that applies here, should the court accept the notion advanced in an amicus brief that we ought to apply in construing this regulation an exemption for some fanciful notion that there may exist directors by designation whose identity is not known to the board of directors? And I say that the answer to that is no. And I don't even think the SEC believes it and let me explain why. The SEC, recently, in August of 2005, adopted a clarification to this rule. If your honors recall, the Third Circuit had suggested that this exemptive rule should only apply if there was a compensation purpose. In fact, that was an argument that was made below, wasn't accepted by Judge Zillian, is not being pressed here. But the SEC said we're going to clarify the scope of this of this exemptive rule. And they published, for comment, a proposed, the proposed rule. And in the comment process, it was brought to the attention of the SEC. You know, as you're republishing this rule in 2005, you ought to consider whether it ought to apply to directors by deputization. And the argument was made and it was made by in letters to the SEC and this is reported in an SEC release number 34-49895 on July 15, 2005. It was reported that this question of directors by deputization was brought to their attention. It was brought to their attention, in fact, by counsel for Mr. Dryling. And they argued to the SEC that the gatekeeper function doesn't work when you're dealing with directors by deputization and you ought to deal with that when you republish this rule. And this exchange, which is of record, occurred after the SEC's amicus brief. Now the SEC adopted the rule in August, published the fact that this director by deputization concept had been brought to their attention, but when they adopted the rule in August of 2005, what they said in the adopting regulation, which appears in the Federal Register 70 Federal Register at 46082, they say the only limitations on the exemption which they're going to apply for transactions between the issuer here, Infospace, and its officers or directors are the objective conditions set forth in the later subsections of the rule. And those objective conditions are, was the transaction approved by the board? So we have agency action before the amicus brief, which doesn't draw this distinction, we have the republish rule where we know the agency in the context of formal rulemaking, notice and comment, address the issue of the directors by deputization, chose not to make the type of distinction which was urged in the last page of an amicus brief that was filed before and published a rule that would if applied, continue to exempt my client's transaction from the scope of Section 16B. We think I... It reminds me a little bit of all the things that are brought to Congress's attention and they decide not to adopt them and to which we're instructed so what? And it seems to me that there's a difference between deciding, you know, what's an exemption which is approved by the board which is clarifying that and providing an interpretation of what's a director. So I see them as two different things and I'm wondering what we can make of something where somebody sends in a comment and you know, it falls flat basically. I mean a lot of comments are sent in to which they don't decide to amend their regulation. But it's not because, I'm not saying a letter was sent, I'm saying the SEC published a discussion of the considerations as part of its rulemaking process right, but it describes that it got this comment, it describes the comment it gets and it describes its reasons for dealing with them and it says it doesn't believe, it discusses why it thinks the gatekeeper function is served by a board of directors. It discusses in that release why it thinks that the advantage of certainty and clarity Well let me ask you this, we have some case law that suggests we should look at what an agency like this puts in a brief and now you're saying, well, they didn't really, they couldn't have really meant that because now they have this more, well later and perhaps more precise consideration. You're right. I'm never suggesting Do you want to wait? Do you think we should just ask them? Excuse me? Do you think we should just ask them what their position is? That's, I If you were You're kind of saying that they've changed their position. No, I'm saying that that there, and I think this court I know this court has recognized that one of the things that you can take into account and I think the terms you use and the Supreme Court has used is terms of respect, but it's a respect that's proportional to the logic of the argument it makes and the Supreme Court, and I think this court has drawn a distinction between agency interpretations that are the product of rulemaking and notice and comment, versus more casual statements That's a different point than what you had made and what Judge McKeon asked you about One is how much weight you would give when you say the last page of an amicus brief The other question is different and the one you were discussing was after they make that statement in an amicus brief when they then say things that you say are inconsistent with it then what do we do? As you made the argument I wondered why they left this amicus brief here without filing anything supplemental But Judge McKeon said do you think we ought to ask them? Is this still their position? I would welcome, actually if this court were to ask the SEC to express its views with respect to that Why wouldn't they? They must be aware they filed this brief If it really doesn't represent their position any longer wouldn't you think? I would have thought you might have asked them to file a supplemental brief I don't know how busy they are, what attention or what focus this issue gets at the commission level versus at the staff level who submitted the amicus brief But the point if the court were to resolve it the court would have to ask without going to the commission and asking for a clarification of its views in light of the subsequent release which did not address or draw the distinctions with respect to directors by deputization if you were to do that the commission may  we'd have the opportunity in the course of that process to meet with the staff of the commission but the other point which is what is the respect that is due that argument is is it logical to assume that there are such things as stealth directors by deputization there's no allegation in the complaint by the way that Mr. House's status was unknown as the complaint alleges to the factual question and the question I posed to the plaintiff and he responded with a hypothetical in terms of what the corporation could fairly or the other directors could fairly assume that the person who's in this position having other corporate affiliations that are or are not recognized as being deputization they would change their behavior or relate to that person differently based on whether or not they would anticipate that director Mr. House is he sharing inside information with his other corporation or not and so posed a distinction which says formal recognition of deputization means the corporation views this person differently and views the other corporation differently sure the fact that they know that Mr. House is also an officer of American Express is that enough for them to to infer the relationship that American Express now knows what we know well the fact I'm not quite sure how to answer that question I didn't know how to ask it so I can try again if it's not clear there is in this case the transaction that was was not for was not personal to Mr. House or American Express it was a merger transaction in which every shareholder of CREO was going to acquire InfoSpace shares there was nothing unique or personal to him if the question is the concern here is more on the back end should InfoSpace assume, should it act with the belief that Mr. House is sharing with American Express what he knows about InfoSpace during his service as a director including at the time that American Express decides to sell I think every board of directors should assume that their directors will maintain as appropriate and as we counsel directors and we counsel people on boards when you sit on a board you are a the confidences that you have or that are given to you and I think other directors would know the difficulty I have is I have difficulty conceiving of the concept of a secret director by deputization because the notion is that you are a director on company B as a result of company A's shareholdings or influence that's going to be known to every director on that board of directors being there and then what you do while you are there given the scope of fiduciary duties let me just turn to a slightly different but related factual question and that is if the suggestion that you wouldn't need to resolve the legal issue of the director by deputization and as you say usurp the SEC's rule making authority there but instead you could there still remains a factual issue as to the specificity of board approval there isn't any if the particular rule says that there has to be specific authorization of the transaction and here we have it's in the record the board approved a merger transaction they knew all the shareholders what they were getting the rule sometimes when it deals with specificity in greater detail talks about in the circumstance of issuing options the particular directors but the grill case from the second circuit in talking about that footnote said that when you are dealing with merger transactions you can't you could hardly expect more specificity than knowing that every shareholder is going to be going to be dealt with so I think I don't think there is an issue a fair issue that remains with respect to the I don't think there is a fair issue that remains with respect to the application of the rule or the specificity of the rule nor do I think in light of the subsequent those provisions of the federal register and the SEC release that I cited I don't think there is any question that the SEC had raised and considered whether or not they ought to adopt a different standard with respect to directors by deputization and chose not to do so when it reiterated the rule in 2005 subsequent to the subsequent to the release Would it matter if you do this as a factual matter and not be fixed because you have to take the allegations as they state them that he is a director by deputization so if you take that as a given would it matter that in light of the Wilson-Sonsini letter would they say well no he's not really that but the allegations say he is such a category would that category  within the current framework I don't think so because we say that the rule applies to directors and the SEC has said sometimes directors by deputization equals directors so there's no need we have accepted the notion for purposes of this argument that Mr. House is a deputized director we don't concede it for any other purpose certainly and there is no allegation as I said in the complaint that his status was unknown that just doesn't exist thank you your honor thank you counsel I'd like first to address counsel's argument that the SEC's latest amendment to the rule somehow undermines the position it took in its amicus brief here the amendment to the rule simply does not deal with the question of directors by deputization yes we did write to the SEC and we argued you should address this issue in this rule but the SEC simply chose not to address it there there's nothing in the rule itself or in the adopting release that accompanied the amendment of the rule where the SEC repudiates the position that it took here with respect to known and unknown directors by deputization the SEC position is crystal clear it simply has not been repudiated they are aware of what's going on in this court and they've set forth their position if the court feels the need to ask the SEC we have no problem with that we're confident that they will we're all pretty much in the same boat here we don't know we don't know if there has been a change in the SEC well I would submit we do know because the position they've taken in the amicus brief before this court is crystal clear and there's been no repudiation of that anywhere in the amendment to the rule in any subsequent briefing before this court their position is very clear before this court with respect counsel touched a little bit on the foremost case and suggested that it may answer the question of whether a court can look to only one leg of a short swing transaction in isolation and if you look at the foremost it simply does not answer that question we would suggest instead that the court look at the Alice Chalmers case out of the 7th circuit it's a 1975 case goes into the purpose and history of the statute and it clearly states that the short swing transaction both legs are to be viewed as a conceptual unit you need to look at whether abuse arises out of the entire short swing transaction and if you accept that that undermines the fundamental argument for this exemption we'll give you one more minute you're a minute over I'd like to return to the final question Judge McKeon asked do we need a pristine regulation do we need regulatory perfection no we do not but we do have a standard by which to judge whether the exemption is the words of the statute say the SEC may create exemptions that are quote not comprehended within the purpose of the statute the purpose of the statute is to prevent insider trading the unfair in and out short swing trading that occurred in this case and if the exemption invites speculative abuse if it is a less than remote possibility in this situation then the SEC has overstepped its bounds that's the touchstone the statute itself not comprehended within the purpose of the statute if you look at various hypotheticals if you look at the third circuits note that where you've got a closely held corporation that's going public there's the possibilities for speculative abuse abound where you've got a dominant insider who exerts control and influence over his or her fellow board members that's another situation that is right with possibilities for speculative abuse the rule basically exempts those transactions whenever there's board approval it's not good enough under that statutory touchstone thank you very much thank you counsel thank you both very much the case just argued will be submitted
judges: Reinhardt, McKeown, Clifton